NYGAARD, Circuit Judge,
dissenting.
I believe the issue in this case is very close. Nonetheless, I dissent because I would, in cases such as this, give greater deference to the discretion exercised by the district court, than appellant would have us give. To do otherwise further obscures the already-blurred line demarcating the boundary between the plenary and abuse of discretion standards of review. I consider reversing the district court’s decision here to be the antithesis of the holding the majority cites that:
[tjrial judges retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, confusion of the issues or interrogation that is repetitive or only marginally relevant.
United States v. Baptista-Rodriguez, 17 F.3d 1354, 1370-71 (11th Cir.1994). I conclude that the trial judge acted within her sound discretion, and would affirm.
What the appellant invites us to perform here is essentially a plenary review of a discretionary decision that simply cannot and, moreover, should not be reviewed de novo. The myriad of twists and turns in a trial, the shifting biases as evidence comes before the factfinder, and the entire personality and flavor of a trial cannot be adequately conveyed in the cold record we review on appeal. Hence, we have standardized review to grant the district courts “wide latitude” to limit cross-examination, and to make numerous other evidentiary decisions, subject only to a review for whether they abused that discretion. Not from any argument given us by the appellant, nor by any definition of the word, can I consider “abuse” an appropriate label for the district court’s discretion on this singular judgment call.
At sidebar, appellant’s counsel argued to the district court that she be permitted to reveal to the jury that “[Sabir] was terminated by the department....” That is precisely what the court allowed her to do.[1] In her argument to the district court, counsel mentioned, without citing any source of proof, that “[Sabir] was terminated” for “alleged involvement with the rioting inmates.” Nonetheless, she did not persist on this point, and I deduce from the substance of the sidebar that the real argument was whether the word “fired” or “terminated” more accurately describes how Sabir was separated from the chaplaincy. (See Maj. typescript at *1238 1229, n. 4). Moreover, I consider the subtle differences between the use of the word “terminated” and the use of the word “fired” to be the type of evidentiary “fine tuning” that is unbecoming when done by appellate judges, who review the evidence in a vacuum relieved only by a printed record. Either word implies that he did not leave voluntarily. I reject appellant’s argument on this issue.
Next, even if I were to conclude that this decision by the district court was an abuse of its discretion, I believe the error is harmless. Indeed, the testimony the Imam offered, even when taken in the light most favorable to appellee, is the following:
1. that the plaintiff was “in a shameful manner,” A73;
2. that Douglas “said he was being harassed by the officers,” A74;
3. that Douglas was naked in his cell and “had abrasions or bruises in the chest area and around the neck area,” and “was sick with a cold,” A74-75;
4. that Lieutenant Spells “said to me that the atmosphere, that there was nothing he could really do in reference to getting medication because of the atmosphere in the prison ... his hands was [sic] tied. And even if he wanted to do something, he couldn’t do it,” A76-77;
5. the testimony most damaging to the defendants was Sabir’s nonresponsive conclusion that the bruises “signalled to me that he had been beaten.” To this appellant objected, but then did not even follow with a request that the Imam’s statement be stricken.
The gravamen of Douglas’ complaint is that a number of correctional officer defendants “did in fact, acting under the color and authority of Pennsylvania state law, beat, stumped [sic] and kicked plaintiff Andre Douglas in the head, arms, back and legs while plaintiff was handcuffed and naked,” and that other officers during this beating “did not make an attempt to stop them.” A20-21. Hence, what is at issue is whether some defendants beat Douglas, while others stood idly by. The defendants flatly denied the allegations. On that point, when asked if he saw “any of these defendants assault Mr. Douglas,” Sabir answered, “No, I can honestly say no.” A80.
Finally, defendants’ reason for wanting this line of inquiry before the jury was ostensibly to discredit the witness by attempting to show bias. This argument also fails. A significant point we recognize, as the district court no doubt did, but which the appellant conveniently elides, is that Sabir was not terminated by the defendants. Indeed, they were co-employees of the same facility. Nor was it shown, offered or even suggested that Sabir harbored some bias towards the defendants — if indeed he harbored any at all. In sum, the whole line of inquiry was simply irrelevant to what was at issue in the trial.
I conclude that the district court committed no reversible error. The most critical testimony Sabir offered was that plaintiff was beaten; and this, although nonrespon-sive and improper, was not requested to be stricken. Whether the witness was biased against his former employer is not relevant to these defendants and whether the jury believed Sabir’s testimony is not relevant to the issue of who beat Douglas. On that critical point, Sabir’s testimony was as favorable to the defendants as to the plaintiff. Finally, as the district court concluded, and with which I concur, permitting the defense to explore the reasons only “alleged” for Sabir’s termination, and then the plaintiff to engage in the rehabilitative explanations which were destined to follow, was likely to create the distracting “trial within a trial” which tends to confuse jurors, obfuscate the real issues, and which courts laudably seek to prevent. I find no abuse in the court’s discretionary decisions. I would affirm.

. The attorneys had earlier agreed that plaintiff's counsel would not elicit from a correction officer/witness the reason why she was discharged because they considered this evidence to be irrelevant.